COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Callins
Argued by videoconference

CALVIN ANTONIO WOODSON, A/K/A
 TONY WOODSON

v.      Record No. 0093-25-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE FRANK K. FRIEDMAN
JANUARY 20, 2026

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Sean C. Workowski, Judge

Dana R. Cormier (Dana R. Cormier, P.L.C., on brief), for appellant.

Angelique Rogers, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.


A jury convicted Calvin Antonio Woodson of possession with the intent to distribute

cocaine, possession of cocaine, possession of methamphetamine, and providing a false identity to

law enforcement. In addition, the circuit court convicted him on a guilty plea of driving on a

suspended driver's license. On appeal, Woodson challenges the sufficiency of the evidence to

sustain his cocaine and methamphetamine convictions. We affirm.

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

Late one evening in August 2023, Augusta County Sheriff's Deputy Terrell was on patrol when he noticed a sedan that was "straddling the dotted line in the middle of the road," repeatedly failing to maintain its lane, and slowing to speeds of 30 miles per hour in a 45 mile-per-hour zone. Deputy Terrell initiated a traffic stop, but the sedan's driver, Woodson, "[t]ook . . . awhile to pull over." Eventually, the sedan stopped; a woman, Autumn Crouse, was sitting in the front passenger seat. The driver's window did not work, so Woodson opened the driver's door to talk to Terrell. When he did so, Terrell saw a green, glass pipe inside the sedan. Terrell obtained Woodson and Crouse's identification and learned that neither had a valid driver's license. Because neither Woodson nor Crouse could lawfully drive the sedan away from the traffic stop, Terrell instructed them both to exit the sedan and sit on his police vehicle's front "brush guard." The police vehicle was "running" and parked behind the sedan with its headlights on. As Woodson and Crouse exited the vehicle, Terrell noticed "another glass smoking device" in the sedan.

Deputy Terrell searched the sedan and found two hard, white crystalline "rocks" on the passenger floorboard. He also found a "spoon [holding] white residue" inside Crouse's purse. During the search, Terrell noticed that Woodson was "moving around quite a bit"; and while looking through the sedan's back window, Terrell saw Woodson's "arm move upward" like he was "throwing something" and "heard leaves off to the side of the road make noise." At that point, Terrell immediately ceased searching the sedan, walked toward Woodson, and found "a bag of hard white substance" beside the place where Woodson was standing, about an "arm's reach from where

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

[Terrell] saw his arm go." The bag was on the "opposite side of the [police] vehicle" from Crouse, and Terrell did not "see her move." Subsequent forensic analysis revealed that the bag contained 26.860 grams of cocaine. The substance found on the bank was "similar to the substance" found on the sedan's passenger floorboard.[3] Woodson was indicted for possession of cocaine with the intent to distribute.

In January 2024, about five months later, Deputy Terrell initiated a traffic stop on another vehicle and learned that Woodson, who was "actively wanted for a capias," was sitting in the front passenger seat. Woodson gave Terrell identification that belonged to another person, which Terrell immediately recognized as "not correct."

Terrell removed Woodson from the passenger seat and arrested him. Then another officer, Sergeant Matthew Wilcher, approached the vehicle's driver to tell him that the car would be towed. Wilcher spoke to the driver through the passenger door, which was still open from when Terrell removed Woodson. Wilcher saw "a clear plastic container in the . . . passenger door . . . pocket" that contained "a white powdery substance."

Deputy Terrell searched Woodson's person and found "a digital scale, steel wool, and personal effects." Terrell also found additional steel wool and "a glass smoking device" wrapped in a paper towel in the passenger door pocket, near the plastic container. Subsequent forensic analysis revealed that the digital scale had methamphetamine and cocaine residue on it, and the plastic container contained 0.659 gram of cocaine.

Investigator Hilliard, whom the circuit court qualified as an "expert in narcotic investigation," testified that the "common weight" for the sale of cocaine or methamphetamine is

---

[3] The substance found on the floorboard was not subjected to forensic analysis because, according to Deputy Terrell, the Department of Forensic Science "won't test" multiple items if police send them "the same substances in different items." Terrell also found a bag containing 3.585 grams of methamphetamine during the search. Woodson was not convicted of possessing methamphetamine related to the August 2023 incident.

about a gram, which is "what the average user" consumes "throughout [a] day." Generally, a tenth of a gram would be consumed in one use. Hilliard noted that possessing 26 grams of cocaine was not "consistent with personal use." Hilliard stated that he had "never seen a user buy in bulk," as the "largest quantity" a user would buy was an "eight ball," or 3.5 grams. Hilliard opined that only "drug dealers" bought cocaine in "ounces or more," and there were 28 grams in an ounce. Hilliard additionally stated that possessing individually packaged cocaine alongside large amounts of cash, scales, firearms, and "owe sheets" indicates an intent to distribute.

Woodson moved to strike the Commonwealth's evidence, arguing that it failed to prove that he possessed or had the intent to distribute the 26.860 grams of cocaine found during the August 2023 traffic stop. Woodson maintained it was a reasonable hypothesis that the cocaine belonged to Crouse. Next, regarding the January 2024 traffic stop, Woodson contended that the evidence failed to prove that he was aware of the cocaine in the door pocket or the methamphetamine and cocaine residue on the scale. The circuit court denied the motions, finding that Woodson's arguments raised "questions of fact for the jury." The jury convicted Woodson of possession with the intent to distribute cocaine in August 2023 and possession of both methamphetamine and cocaine in January 2024.

## ANALYSIS

### I. Standard of Review

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it

- 4 -

might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## II. The Commonwealth Provided Sufficient Evidence for a Jury to Find Woodson Possessed 26 Grams of Cocaine on August 10, 2023

Woodson argues that the evidence failed to exclude the hypothesis that the cocaine found on the bank in August 2023 belonged to Crouse, not him. Woodson stresses that it was dark during the stop and argues that it was "highly unlikely" that Terrell "could have seen" him "make a throwing motion with his arm and then" hear "a noise in the leaves outside the vehicle." Woodson contends that the police vehicle's headlights and engine would have obscured Terrell's senses. Additionally, Woodson argues that there is "no reasonable explanation" for how the cocaine was only an "arm's length" away from him if he threw it. The Commonwealth contends that there was sufficient evidence of Woodson's actual and constructive possession of the cocaine.

"[T]o convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020) (citing *Jones v. Commonwealth*, 17 Va. App. 572, 574 (1994)). Possession of a controlled substance may be "actual or constructive." *Morris v. Commonwealth*, 51 Va. App. 459, 465 (2008) (citing *Birdsong v. Commonwealth*, 37 Va. App. 603, 607 (2002)). Constructive

- 5 -

possession is shown by "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control." *Yerling*, 71 Va. App. at 532 (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)).

Both actual and constructive possession require that the defendant consciously and intentionally possess the drugs with knowledge of their nature and character. *Armstrong v. Commonwealth*, 29 Va. App. 102, 114 (1999) ("The Commonwealth must also establish that the defendant intentionally and consciously possessed it with knowledge of its nature and character."). Importantly, the evidence must only show that a defendant was aware that he possessed "a controlled substance," as the "General Assembly has chosen not to excuse a defendant who knows he is possessing a controlled substance, but is unaware or perhaps mistaken as to the precise identity of the specific substance." *Sierra v. Commonwealth*, 59 Va. App. 770, 779, 783 (2012).

What constitutes constructive possession is a factual question. *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (citing *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)). Accordingly, "[t]he trial court's judgment 'will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" *Epps v. Commonwealth*, 66 Va. App. 393, 402 (2016) (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 443 (1987)).

"[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that [it] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor*, 294 Va. at 512 (first alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a

reasonable mind irresistibly to a conclusion." *Id.* at 512-13 (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, we conclude the evidence was sufficient for the jury to find that Woodson possessed the cocaine during the August 2023 traffic stop. Deputy Terrell, testifying about the August 2023 stop, stated that he saw Woodson make a throwing motion with his arm as Terrell was searching the car. At the same time, Terrell heard a noise in the leaves beside the road, where he found the 26 grams of cocaine. Terrell testified that he found the cocaine about an "arm's reach from where [Terrell] saw [Woodson's] arm go," and on the opposite side of the vehicle from Crouse. The jury could reasonably infer from this testimony that Woodson, not Crouse, intentionally discarded the cocaine so that it was not on Woodson's person if Terrell had searched him. Regardless, circumstantial evidence need not exclude joint ownership. *Smallwood*, 278 Va. at 631 ("Possession and not ownership is the vital issue. Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly."). Instead, the evidence must only "indicate[] that had [the defendant] wanted to actually possess [the drugs], he could have." *Hunter v. Commonwealth*, 56 Va. App. 50, 60 (2010). Constructive possession is not limited by the number of possessors but by evidence indicating the defendant's ability to possess the cocaine.

Furthermore, Woodson's discarding of the cocaine not only demonstrated his actual possession of the cocaine but also indicated his knowledge of its illegal nature. *See Bagley v. Commonwealth*, 73 Va. App. 1, 19 (2021) (reasoning that the appellant's furtive movements "indicated possible efforts to hide" contraband); *Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("[I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, *concealment*, assumption of a false name, and related conduct

are admissible as evidence of consciousness of guilt, and thus of guilt itself." (alteration in original) (emphasis added) (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991))).

Notwithstanding the above, Woodson asks this Court to disregard Terrell's testimony that he saw Woodson make a throwing motion and heard a noise in the leaves. On appeal, however, this Court must defer to the fact finder's credibility determinations unless, "as a matter of law, the testimony is inherently incredible." *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). Woodson raises no argument that Terrell's testimony was inherently incredible as a matter of law. That the police vehicle was running, and its headlights were on, do not compel the conclusion that Terrell could not see Woodson make a throwing motion or hear a noise in the leaves by the road. *See Collins v. Commonwealth*, 13 Va. App. 177, 179-80 (1991) (holding that the fact finder "could have found" that the defendant had slipped as he "exited the car," but it found instead that he "threw drugs under the vehicle," and that finding is "binding" on appeal).

Similarly, Woodson's argument that the cocaine was not far from him is equally unavailing, as Terrell plainly testified it was on the "bank" next to the road, and nothing in Terrell's testimony required the jury to believe that Woodson threw the cocaine a substantial distance. Moreover, "[b]y finding the defendant guilty, . . . the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *James v. Commonwealth*, 53 Va. App. 671, 681 (2009) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). That conclusion "is itself a 'question of fact,' subject to deferential appellate review." *Id.* The jury considered all the above circumstances and convicted Woodson, and this Court cannot overturn the jury's credibility determination on appeal. *See Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) ("[E]vidence with some element of untrustworthiness is customary grist for the jury mill.").

- 8 -

III. The Commonwealth Presented Sufficient Evidence for the Jury to Find Woodson Knew He Possessed Controlled Substances on January 25, 2024

Regarding the January 2024 stop, Woodson maintains that there was insufficient evidence he was aware of the nature and character of the methamphetamine and cocaine on the scale and on the container of cocaine; however, there was ample evidence Woodson knew he possessed illegal substances.

"While awareness is an essential ingredient in the crime of possession of narcotics, it may be proved by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics in the place where they were found." *Wymer v. Commonwealth*, 12 Va. App. 294, 300 (1991). Here, as noted by the Commonwealth, Woodson's acts, declarations, and conduct evince his knowledge of the methamphetamine and cocaine. Woodson's primary challenge to the container of cocaine is that the container was not in plain view; however, this Court has rejected such challenges and found constructive possession even when contraband was not in plain sight. *Womack v. Commonwealth*, 82 Va. App. 289, 299 (2024) (rejecting the defendant's argument that the evidence was insufficient because the "search was conducted at night," and finding sufficient evidence of constructive possession of the firearm even though it was not in "plain view" of the searching officer). Nevertheless, Woodson's assertion that the container was not in plain view misstates the evidence. Sergeant Wilcher, who discovered the container, testified that the container and the contents were visible as he approached the open passenger door.

Additionally, there was only one other occupant of the car, yet Woodson was the one who indicated his knowledge that the drugs were illegal by exhibiting guilty behavior. *Wymer*, 12 Va. App. at 301. Woodson evidenced his guilt by providing a false name to the police. *Christian v. Commonwealth*, 59 Va. App. 603, 613 (2012). When a suspect possesses a controlled substance and simultaneously provides police with a false name, the false statement is

- 9 -

probative of the suspect's knowledge that he is in fact possessing contraband. *Id.* at 613-14.

Furthermore, digital scales are a well-recognized "tool" of the drug trade, *Bolden v. Commonwealth*, 49 Va. App. 285, 294 (2007), which is consistent with Hilliard's testimony that drugs are typically sold and consumed in gram increments. And the presence of the steel wool on Woodson's person connected him to the cocaine, as well as the additional steel wool in the passenger door, immediately within Woodson's reach when he was seated in the car. Given the totality of those circumstances, the jury could reasonably infer that Woodson's possession of the scale, and steel wool, related to his involvement in the drug trade and that he was aware of and possessed the narcotics residue on the scale and the cocaine in the passenger door.[4]

> IV. The Commonwealth Presented Sufficient Evidence for a Jury to Find Woodson had the Intent to Distribute the 26 Grams of Cocaine on August 10, 2023

Next, Woodson asserts that the evidence failed to prove that he intended to distribute the cocaine, as it was not packaged for individual use or sale, and he possessed no cash, "owe sheets," or other indicia of distribution. Rather, Woodson argues that there were smoking devices in the sedan, which are consistent with personal use.

There is sufficient evidence to establish intent to distribute where a defendant possesses a quantity of drugs that exceeds the amount a person would ordinarily possess for personal use. *Cole v. Commonwealth*, 294 Va. 342, 362 (2017) (finding sufficient evidence of intent to distribute based on drug quantity); *Hunter v. Commonwealth*, 213 Va. 569, 570 (1973) ("Indeed,

---

[4] Courts have previously found sufficient evidence of a defendant's knowledge of drugs based on similar circumstances existing in this case such as: providing a false name, being one of the exclusive occupants of the crime scene, possessing drug paraphernalia and scales, and being surrounded by drugs. *Christian*, 59 Va. App. at 613 (finding sufficient evidence of drug possession where the defendant gave a false name); *Wymer*, 12 Va. App. at 301 (finding sufficient evidence of knowledge where the defendant and one other person were exclusive occupants in the house and where paraphernalia was found in the house and in the defendant's purse); *Covil v. Commonwealth*, 268 Va. 692, 696 (2004) (finding sufficient evidence of knowledge based on the defendant's failure to disclaim the drugs outright).

quantity, when greater than the supply ordinarily possessed by a narcotics user for his personal use, is a circumstance which, standing alone, may be sufficient to support a finding of intent to distribute."); *Clarke v. Commonwealth*, 32 Va. App. 286, 304-05 (2000) ("Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it.").

Here there was sufficient evidence of Woodson's intent to distribute. Woodson possessed 26.860 grams of cocaine, which Investigator Hilliard testified far exceeded the amount possible for personal use. Woodson maintains, however, that the 26 grams of cocaine were for his personal use. As evidence of this, Woodson points to the presence of smoking devices and a spoon in the car; he also insists on the affordability of buying cocaine in "bulk." Contrary to Woodson's arguments, Hilliard testified that he had "never seen" a mere user "buy in bulk"; rather, the "large quantities" that users would buy at once was an "eight ball," or 3.5 grams. Hilliard recognized that there were other factors that could indicate an intent to distribute, such as cash and "owe sheets," but he nevertheless opined that the sheer quantity of cocaine Woodson possessed was inconsistent with personal use. Thus, even with the presence of smoking devices in the sedan, the sheer quantity of the cocaine, combined with Hilliard's expert testimony, was sufficient to support the jury's conclusion that Woodson possessed the cocaine with the intent to distribute. *See Hunter*, 213 Va. at 570 ("Indeed, quantity, when greater than the supply ordinarily possessed by a narcotics user for his personal use, is a circumstance which, standing alone, may be sufficient to support a finding of intent to distribute."); *Dunbar v. Commonwealth*, 29 Va. App. 387, 394 (1999) (holding that the presence of drug paraphernalia "does not conclusively refute a finding of intent to distribute").

In short, we find the Commonwealth presented sufficient evidence for a jury to conclude beyond a reasonable doubt Woodson's guilt regarding his intent to distribute.

- 11 -

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*